# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE

Assigned on Briefs October 18, 2011

### STATE OF TENNESSEE v. GREGORY A. SHAVER

### Direct Appeal from the Circuit Court for Williamson County
### No. CR034763     Timothy L. Easter, Judge

_____

### No. M2011-00538-CCA-R3-CD - Filed February 27, 2012

_____

The defendant, Gregory A. Shaver, pled guilty to initiation of a process intended to result in the manufacture of methamphetamine, a Class B felony. After a sentencing hearing, the trial court sentenced the defendant to eleven years in the Tennessee Department of Correction. On appeal, the defendant contends that the length of the sentence is excessive. Following review of the record, we affirm the sentence.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JEFFREY S. BIVINS, J., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Gregory A. Shaver.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Kim R. Helper, District Attorney General; and Sean B. Duddy, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Procedural History

The relevant facts underlying the defendant's convictions, as contained in the presentence investigation report, are as follows:

On 4-2-2008 at [approximately] 10:20 [P.M.], DTF agents, while executing an arrest warrant at 5854 Davis Hollow [Road], Williamson County, [Tennessee], detected the odor of chemicals known to be used in the

manufacture of methamphetamine. Also visible were items and containers in the yard. Upon entry to the residence, agents observed a glass pipe with residue [lying] on a piece of furniture. Also in the home were an [eight-year-old] male and a [ten-year-old] female child. Following the issuance and service of a search warrant, various chemicals known to be used in the manufacture of meth and paraphernalia known to be used to ingest meth were found throughout the residence. Found at the residence were [the defendant] and Cynthia D. Murrell . . .

The defendant entered an open plea to Count One, initiating a process intended to result in the manufacture of methamphetamine, of a four-count indictment. As part of the plea agreement, the defendant was to be sentenced as a Range I, standard offender, and the remaining charges were dismissed. Following the trial court's acceptance of the defendant's guilty plea, a sentencing hearing was held.

The State submitted the presentence investigation report as evidence at the hearing. The report contained the five prior felony convictions, most of which were drug-related, from the State's notice to seek enhanced punishment. In addition to those convictions, the report indicated twenty-three misdemeanor convictions. The defendant reported that he first used alcohol at age fourteen but quit drinking at age thirty due to "his DUI's." He reported having tried cocaine, Lortab, Xanax, and Valium, but that he primarily used marijuana and methamphetamine. The defendant described his marijuana use as "daily" and his methamphetamine use as sporadic, explaining that he used "for a week then stop[ped] for a couple weeks." The defendant reported two attempts at substance abuse treatment. The first was in 2006, but he did not complete the treatment because his parole was revoked. The second attempt was in 2008, which was also not completed due to a failed drug screen. The report further indicated that the defendant scored "high risk" on the required risk and need assessment.

Scott Jones, a 21st Judicial Drug Task Force agent, was involved in the investigation of this case. Agent Jones testified that the defendant used a "one-pot" method, whereby all of the components are combined in one bottle to make methamphetamine. This method is often used because it is the fastest method of production. A "toxic fume" associated with ammonia is generated during the process. Agent Jones testified that, as a result of the toxic fumes, the area of production becomes contaminated. Under state and federal law, after a property has been identified as a location producing methamphetamine, any residence on that property must be quarantined. Agent Jones testified that the costs for cleaning a contaminated home varies but that the cost to a homeowner in one of his cases was $36,000.

Agent Jones testified that there is an explosive nature to the mixture of the chemicals used to produce methamphetamine. He worked on several cases involving

2

local lab explosions and three cases in other parts of the state that each involved a death due to an explosion. Because of the availability of pseudoephedrine, the main ingredient for methamphetamine, Tennessee has experienced a forty-three percent increase in methamphetamine labs from 2009 to 2010.

Agent Jones testified that he had investigated the defendant for methamphetamine labs before the current charges. On April 3, 2008, as relevant to the defendant's current conviction, Agent Jones conducted an investigation based upon a report that the defendant, recently released from the Tennessee Department of Correction, was again manufacturing methamphetamine. Agent Jones set up surveillance of the residence to determine if the defendant was present. Within a couple of hours, he observed the defendant enter the residence with a woman and two children. As Agent Jones approached the residence to serve an arrest warrant for the defendant, Agent Jones detected the odor associated with the manufacture of methamphetamine. He also identified items associated with the manufacture of methamphetamine such as a "burn barrel" and a two-liter plastic bottle with white sludge material inside. Agent Jones obtained and executed a search warrant for the residence and found items consistent with the manufacture of methamphetamine such as Coleman fuel, salt stored in the rafters, household lye, and plastic bottles with a white substance powder inside that field-tested positive for methamphetamine.

Robert Shaver, the defendant's father, testified that he has observed positive change in his son since the defendant's incarceration. Shaver agreed that the defendant could live with him after release from custody. He stated that he was not aware that the defendant had made methamphetamine while living with him the last time but that he was willing to do "anything [he] can" to help the defendant "get going in the right direction."

The defendant agreed that he had a long criminal history and a "history with methamphetamine." The defendant admitted to manufacturing methamphetamine and his addiction to the drug. He testified that he produced small amounts for personal consumption. The defendant asked the trial court to consider split confinement in his case. He explained that he had a "reality check"during his current thirty-four-month incarceration. His brother's serious medical condition, his aging parents, and his own baptism attributed to his desire to "get out and live for something."

On cross-examination, the defendant testified that he was incarcerated in Hickman County jail for twenty-one months on an eight-year sentence. The defendant was on parole for six months but then violated his parole due to a drug screen that indicated methamphetamine use. The defendant returned, this time to prison, for another fifteen months. The defendant testified that he attended drug treatment programs offered at the prison during his second incarceration. The defendant was again paroled in December

3

2007, and, upon release, learned of the "one-pot" method and began manufacturing methamphetamine. The defendant agreed that he was on parole when he committed the current offense. The defendant testified that he had two DUI convictions and one DUI-second offense conviction.

After hearing the evidence presented, the trial court sentenced the defendant to eleven years for the initiation of a process intended to result in the manufacture of methamphetamine conviction. The defendant now timely appeals the sentencing decision.

## Analysis

We first note that the defendant failed to include a transcript of the guilty plea submission hearing. It is the defendant's duty to compile a complete record for appeal. Tenn. R. App. P. 24(b). A recent panel of this court held that the guilty plea hearing transcript is vital to a *de novo* review of sentencing and, in the absence of an adequate record, we will presume the trial court's ruling was supported by sufficient evidence. *See State v. Christine Caudle*, No. M2010-01172-CCA-R3-CD, 2011 WL 6152286 (Tenn. Crim. App. at Nashville, Dec. 8, 2011). Another panel of this court, however, concluded that, despite the absence of the guilty plea submission hearing transcript, the record was adequate to afford appellate review. *State v. Steward*, No. E2010-01918-CCA-R3-CD, 2011 WL 4346659 at *5 (Tenn. Crim. App. at Knoxville, Sept. 19, 2011) *no Tenn. R. App. P. 11 application filed*. Based upon the specific facts of this case, we conclude that the record is sufficient to afford appellate review.

The defendant's only issue on appeal is the length of the sentence imposed. The State responds that the trial court properly considered the relevant factors and properly enhanced the defendant's sentence based on his extensive criminal history.

When an accused challenges the length, range, or manner of service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2010); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *Ashby*, 823 S.W.2d at 169. The burden is on the defendant to show that the sentencing was improper. T.C.A. § 40-35-401 (2010), Sentencing Comm'n Cmts.

When conducting a *de novo* review of the sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence

--

4

report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2010); *Ashby*, 823 S.W.2d at 168. Furthermore, we emphasize that facts relevant to sentencing must be established by a preponderance of the evidence and not beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000) (citing *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997)).

Before the 2005 amendments to the Sentencing Act, both the State and a defendant could appeal the manner in which a trial court weighed enhancement and mitigating factors it found to apply to the defendant. T.C.A. § 40-35-401(b)(2) (2003). However, the 2005 amendments deleted as grounds for appeal a claim that the trial court did not properly weigh the enhancement and mitigating factors. *See* 2005 Tenn. Pub. Acts ch. 353, §§ 8–9. In summary, although this court cannot review a trial court's weighing of enhancement factors, we can review the trial court's application of those enhancement factors. T.C.A. § 40-35-401(d) (2010); *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008).

The defendant was sentenced as a Range I, standard offender and was convicted of a Class B felony, which subjected the defendant to a sentencing range of eight to twelve years. *See* T.C.A. § 40-35-112(a)(2) (2010). The trial court first considered the relevant sentencing factors set forth in Tennessee Code Annotated 40-35-210. The trial court then considered both enhancing and mitigating factors. The trial court found enhancement factor (1), that the defendant has a previous history of criminal convictions, in addition to those necessary to establish the range. T.C.A. § 40-35-114(1) (2010). In support of application of this factor, the trial court noted that the defendant had twenty-three prior misdemeanor convictions and five prior felony convictions. Next, the trial court found applicable enhancement factor (13), that at the time of the felony, the defendant was on parole. *Id.* at 13. As to mitigating factors, the trial court found mitigating factor (13), the catch-all provision, applicable because the defendant entered a plea in this case evidencing an acceptance of responsibility for his conduct. T.C.A. § 40-35-113(13) (2010). The trial court acknowledged that there was no evidence that the defendant sold drugs but found it "disturbing" that small children were present in an area with "toxic fumes." The trial court stated that due to "slight mitigation" present in the case, the defendant would not be given the maximum sentence of twelve years but, instead, a sentence of eleven years.

The trial court noted that the defendant is not a favorable candidate for alternative sentencing based upon his conviction for a Class B felony. *See* T.C.A. § 40-35-102(6)

--

(2010). The trial court went on to apply sentencing considerations set forth in Tennessee Code Annotated section 40-35-103 and general sentencing guidelines. Upon consideration, the trial court denied alternative sentencing based upon the defendant's extensive history of criminal conduct, past failures at less restrictive measures than incarceration, and lack of potential for rehabilitation. *See* T.C.A. §§ 40-35-102(1)(5) (2010).

The defendant does not appeal the service of the sentence but challenges the length of the sentence. Our review of the record reveals that the trial court properly applied enhancement factor (1). The defendant, who was sentenced as a Range I, standard offender, had five prior felony convictions and twenty-three misdemeanor convictions; he also admitted to illegal drug use other than methamphetamine. This extensive criminal conduct demonstrates that the defendant has a "previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the range." T.C.A. § 40-35-114(1) (2010). Further, the record reflects that the defendant was on parole when he committed the instant offense. Thus, the record supports the trial court's finding that "[a]t the time the felony was committed . . . the defendant [was] released on parole." T.C.A. § 40-35-114(13)(B) (2010). The defendant's eleven-year sentence was within the applicable range for the defendant. Because the trial court based the eleven-year sentence on a thorough weighing of the applicable enhancement and mitigating factors, it sentenced the defendant in a manner consistent with the purposes and principles of the Sentencing Act. *State v. Carter*, 254 S.W.3d at 346. As such, we will not disturb his sentence on appeal. The defendant is not entitled to relief on this issue.

### Conclusion

Based on the foregoing and the record as a whole, the sentence is affirmed as imposed.

_____
JOHN EVERETT WILLIAMS, JUDGE

--

6